The next case is Veronica Luz Malavar-Avendano v. Leonardo Alfonso Blanco-Balza, appeal number 201251. Mr. Barak, please proceed. Good afternoon, Matthew Barak for the appellant Veronica Luz Malavar-Avendano. If I may, Chief Judge, may I reserve two minutes for rebuttal? Yes. Thank you. This matter should be reversed as the district court has committed clear error by failing to weigh the evidence and concluding that this child was not unduly influenced by his father prior to making a determination of whether the child was mature enough to object to his return to his home state of Venezuela. In addition, and similarly, the district court erred in determining the child was of a sufficient age and maturity under the Hague Convention to allow the district court to consider the child's preference to remain in the United States. Both of these errors are clear and are grounded in a failure to review the record. These mistakes stem from a presupposition of the outcome based upon the district court's interview of the child and thereafter combined with an expert's opinion bought and paid for by the father to justify its determination. The analysis as purported in the Hague Convention Federal Register regarding a child's preference is clear under Article 13 that the application of this exception is not mandatory. It is discretionary. The reason why it is discretionary as is written in the Federal Register is that it is especially important because of the potential for brainwashing of a child by the alleged abductor. In a circumstance where a child's objection to being returned may be accorded little if any weight if the court believes the child's preference is the product of the abductor's parent's undue influence over the child. This is precisely... Counsel, is the only issue, it's an important issue of course, before us the mature child exception? Yes. The grave risk exception which appears in other cases is not before us, am I correct? No, it is not, Your Honor, that's absolutely correct. In fact, in this matter, the judge didn't weigh or didn't conclude whether the grave risk exception of returning this child to Venezuela would be... She didn't make a decision on that issue. The only issue therefore before you is the child's objection. It's our argument that given the undue influence that was exerted on this child and which was wholly ignored in his clear error and any reading of this record should indicate that this child was unduly pressured by his father over a course of 18 months where contact was limited in the record between his mother when the mother's testimony in this case was completely ignored. When you read this record, I ask, why is the mother who is the primary custodial parent of this child, why is her testimony not within this record as to what she believed to the maturity of this child? Our point is that because of the undue influence the father put on this poor child over a period of time, that that pressure exerted upon him, which is clear and demonstrative and detailed in the record, you don't even get to whether he's mature or not because that exception requires him to be free from influence. This is not the case where the father enabled contact between him and the mother. This is not a case where the child had free contact with his mother. This is a demonstrative campaign by this father as evidenced in that record over a substantial period of time to exert influence and autonomy over the child's decision. By the time we got into the courtroom, he had changed his mind, a factor that was completely not weighed upon by the district court, that this child had changed his mind. Who changed his mind? The child. The child originally, that's in the mother's testimony within the record. Her testimony was that when he first went to have this visit with his father, that he was excited about going and he was excited about coming back. He goes with his father and for a two-month period, which is clear in the record, this child was not afforded the opportunity to talk to his only primary custodial parent this poor kid had ever known. For two months, to me, that is the essence of brainwashing that began upon this child. This child was told about court conversations. This child was prepared. Now, it didn't say coaching in the record, but the words were substantially prepared prior to meeting. The only evidence that supports not sending this child home in terms of his maturity objection was testimony of a bought and paid for non-neutral opinion. The opinion of the court appointed, the neutral, the only party that spoke with the mother, the father, and the child found this child not to be mature enough to make the objection. We said that you don't even get there because the record is so filled with documentary evidence, with testimony regarding the undue influence upon this child. It starts first with the father's initial taking, which the court does not weigh on. This child was taken from Venezuela by permission and then wrongfully retained. I believe that the district court needed to weigh in because the context matters as to how this child ended up staying in the Commonwealth beyond the time he was supposed to be returned. Then there's the statements, multiple statements, multiple testimony in the record, where the father said at one point that I could get into legal trouble and eventually go to jail. This point, which is the only major point that's commented on by the district court, is completely wrong. She concluded that she was unpersuaded by the father's comment to the son that a failure term to Venezuela could result in going to jail. The record, and I urge you to read it on page 176 and 177, is demonstrative that first the father misrepresented his testimony, denied making this statement, and only one confronted with his deposition testimony read in the record the specific words he said to this child that he reluctantly admit that he may have said it. On that record, that's a completely inconsistent finding that this father did not influence this child by making multiple statements to him. In addition, the mother testified that this 10-year-old child, a child where she had been the primary and only custodial parent throughout his life in Venezuela, testified that when she spoke to him, after not speaking to him for a period of time, that he spoke in legalese. I submit to this court what 10-year-old child speaks in legalese who's not under pressure and influence of his father? And then also, in addition, and shockingly to me, the mom testified that her child said that he spoke with the father's attorney during this action. This is pressure. Pressure bursts pipes. And that's what happened in this case. What did the district court say with respect to the neutral expert's finding? They essentially dismissed it. First of all, they concluded that the major finding was that the child just wanted this to be over. But that's not what she testified to at all. Her finding in her report, both within evidence, were that this child was not of a sufficient age and maturity to object to his return, found that there was pressure upon him by both parties, and found that he had been substantially prepared prior to his testimony in front of the district court. So to ignore the neutral, the one independent voice in the room who had an opportunity to speak to these parties, in credit, a bottom paid for expert opinion, that might have some validity, but it certainly shouldn't have the same validity under any standard of an independent report. When you combine that report with the testimony in this case by the mother and the other witnesses. I just want to be clear in my own mind. When you talk about the independent neutral, right, are you talking about the guardian ad litem? Yes, sir. So the district court, who, of course, was in a position to evaluate the credibility of the child, says that, notes, the guardian ad litem also found that the child was prepared for his meeting with her and had obviously been told about her role and the role of a judge, but had not been inappropriately coached. This finding is consistent with the father's testimony that he explained the child's role, the guardian ad litem's role, I should say. And so, basically, your hurdle, I suppose, is that the district court was clearly erroneous? Yes, and we understand that hurdle. We understand it's a high hurdle, but we strongly believe that any reading of this record, any fair reading and evaluation of the evidence here meets that hurdle because it was a clear error. I'll give you an example regarding the guardian ad litem. The finding regarding the fact that the child was not coached is inconsistent, actually, with the testimony. She didn't use the word coached, but I wonder what the word substantial preparation means, which is found on page 299, which is also what the guardian ad litem said. And I think the fact that the court did not weigh in further onto what that finding meant is consistent with a judgment that is clearly erroneous. Why wouldn't the word prepared simply be used in the context that Judge Katzman quoted, that the child understood what the purpose of the visit was? Because we're combining it with the fact that it's one data point of about a dozen data points where pressure was exerted on this child. Can't the guardian ad litem as to pressure say that that could have been internal pressure on the part of the child to want to please the parent with whom he was living? Yeah, exactly, and I think that's part of our argument here, is that over the period of time where this father curtailed contact, which is not weighed in at all by the district court, where the father was discussing the litigation. But the guardian ad litem only said what the guardian said. What the cause of that is would be speculation, wouldn't it? I mean, what you're saying makes sense, but it's not the only reasonable reading, or is it? I think what we're arguing, it is the only reasonable reasoning in light of the testimony that was provided by the mother, the guardian ad litem, by the father's testimony, by the father's credibility. I don't think what I'm saying is I don't think you can review this record and not come to conclude that this father exerted undue influence upon this child, period. I think that the record is ripe with that. In making that judgment, do we have to ignore the testimony of the child himself and the district court's evaluation of it? No, I don't believe you do. I think actually that the child's own testimony is indicative of the pressure that was faced during the course of the 17, 18 months prior to going to trial, where he changed his mind about returning, where he said things like, I would be super sad and all that, and all our work would be wasted, almost like we lost, like it was for nothing. That identification is deeply troubling when you're evaluating pressure upon a child. This child should not be feeling like he's losing anything. And the fact that he is, and he's so identifying with the father, that testimony through his own discussions with the judge, combined with comments that the mother said and testimony that the mother said, with the independent neutral guardianship points regarding this child not being mature enough, which was the finding that he couldn't make his own decision where to live, I think leads to only one conclusion. I guess just pointing somewhat in the other direction is the district court's account of her evaluation of the thoughtfulness of the child when she met with him. I think the child can be thoughtful, certainly, and I think that that certainly is a consideration. But the question is whether he was free and unabated from pressure that the father put on him over that period of time. I think that's where when you evaluate that, there's no question that there was undue influence put upon the child. So before you get to the child's viewpoint, because he needs to be free and unfettered from the undue influence that was put upon him. And that's what's clear and demonstrated in the record. Both the guardian and the expert for the father both said this child was under pressure. Besides the State Department's legal analysis, which is referenced, what other sources can we look to on the question of undue influence? I think that the first answer to your question, I think the first thing I would look at is the fact, and I think that was not properly done in this case, is the fact that there is the notion here that the Hague Convention requires returning to the status quo. That there's a preference here that this is a narrow and limited exception when it comes to undue influence. And I think that if you're going to analyze the maturity exception, it starts and ends with the undue influence upon a child. Can I ask a question on that? The way you're formulating it is suggesting something to me, just about how to understand the legal inquiry. Sure. Were there to be undue influence on the child, there would have to be an exertion of influence that's undue. And you are making the case to us about why the facts support the conclusion that that occurred here, in the sense of being isolated from the mother, being led to identify with the father, being exposed to information that would heighten his identification with the father because of the harm that could come to the father, et cetera. And meeting with the attorney preparation, all of that you say supports a finding that there was undue influence. Am I right, though, that even if we found that there was that type of influence exerted, that the inquiry for us is whether the child was able to make a mature decision despite being subjected to that influence, or is the legal inquiry that if there is evidence of that influence being exerted, that's game over and it doesn't matter how mature the child may seem or how cogent they may seem or how free they are from that influence in making their judgment? I think it's game over. I think that because the… Is there a case law that's clear on that point? I think that what I would argue by analogy, the Evans and Federer case, which talks about the exceptions are construed so narrowly so that the application does not deny the express purpose of the convention. There's a case out of the Third Circuit, which talks about that cited in our brief on the Yang Chang case, which talks about that. I think that because, to answer your inquiry, because it's such a narrow exception, because the… Remember, this is a… We're talking about a treaty that requires, you know, enforcement. And we're talking about not turning this into a custody case, which I would argue that the court really, truly did. And I think when you read this judgment, you take a step back, it reads and feels like a custodial decision. And that's precisely what is prohibited by the convention. And so, to answer your question, I think that you have to find that this child was free or any child similarly situated is free of that undue influence. Because if you don't, you're subjecting… It's not a fair game. What I'm saying is… It's not fair at that point. Because the child can't be free of independent thought at that point. And I think that's why the well-settled, which is not part of this matter, the well-settled exception comes into play, which is not a case of the well-settlement exception of the Hague. So, because this is the only objection the father could have and the only affirmative defense he could raise is the affirmative defense of the child's preference. And that preference needs to be free of the undue influence of the father. So, it would be game over. And I think the finding has to be made here that there was undue influence to such a degree that the child couldn't be free to make his own decision at that point in time. Judge Barron, follow-up? I'm okay. All right, thank you. We'll hear from Ms. Beckley now. Good afternoon. May it please the court. My name is Shamice Beckley, and I'm counsel for the appellee, Leonardo Blanco. What the petitioner is asking for is a reweighing of the evidence. Her complaint is essentially that the district court should have given controlling weight to certain pieces of evidence that she claims cut in her favor. But the appeal is only actually challenging two of the district court's factual findings. One, whether the child was sufficiently mature for his opinion to be taken into account. And then, two, whether the child sincerely objected to return. So, the only question before you is not whether you would have weighed the evidence differently or even whether you would have reached a different conclusion. The only question is whether the district court clearly erred based on her own personal interview with the child and the other evidence that the child was mature, sufficiently mature, for the purposes of the convention and sincerely wished to return. So, are you saying that we don't consider the question as to whether there was undue influence exerted on him? No, you can consider whether the court clearly erred in determining that the child sincerely objected to return, which is where I think that that can come in. Actually, I think there are two places where undue influence could arguably come into the analysis. Relevant here, I think that what I hear counsel to be challenging is that there was undue influence asserted on the child, and that can be a factor in whether or not the child's objection is sincere. And so, it's part of that analysis. And in this case, the judge reached the conclusion, the factual conclusion, that the child's objection was sincere. There is a separate issue, I think. Go ahead. Go ahead. So, there is a separate place where I think it could come in, which I don't believe is an issue here and has not been challenged, which there is case law to suggest that even where a respondent would meet the child objection affirmative defense, that nevertheless, the judge retains the discretion to decline to apply it and to allow the child to be sent back. And in that case, the discretion brings in, it could bring in an unclean hands analysis, whether there was undue influence, and it could come into the analysis there. I don't understand that to be the challenge in this case. What I understand to be the petitioner's challenge is really that the court should have weighed the evidence differently and concluded that the undue influence was such that the child did not genuinely object. And with respect to the district court's finding on the sincerity of the objection, did the district court in making that finding make a predicate finding about the level of influence the child was subjected to? That's not how I read the opinion, and that's not how I read this inquiry in the case law. The question before the judge is, is the child sufficiently mature that their opinion should be taken into account? And then, do they sincerely object to return? And whether there's undue influence is a factor and goes to the weight of the child's objection. Did the district court make a finding with respect to undue influence specifically as a factor in the sincerity finding? Oh, yes. So the judge made three conclusions in her conclusion and the factual conclusions in her opinion. She concludes the child is sufficiently mature, wants to not only wishes to say, but objects to return and that there is no undue influence. So she specifically, based on her interview with the child and the other evidence in the case, determined that his desire to stay in the United States does not be. This is a quote. A desire to stay in the United States does not appear to be the result of undue influence or coaching. Yeah. But I guess what I'm wondering, that goes to, I think, the question I was asking your opponent, which is one way to think about this would be you could have a situation in which undue influence was exerted. A child. But the child, nonetheless, was able to make a sincere decision. Maturely, an alternative way of looking at the world is if there's undue influence, it's impossible to credit that the child could make it. And yet a third possibility is, well, to fairly evaluate whether the child was sincerely making a decision. And there was a lot of smoke in the air about potential undue influence. It would be important for the district court to specifically address not how the child handled it, but the level of pressure that the child was subjected to and then make a finding. Either it wasn't undue influence or if it was, the child was able to overcome it. And I think the worry may be here, if there is one for me, is at that last possibility, it seems like there might be some value in assessing the sincerity of the child judgment in a case in which there's a lot of smoke about potential undue influence to have a clear finding by the district court as to whether that influence was undue apart from how the child responded to it or not. And I guess, would it be possible to read this record to have the district court made such a finding? And if not, is there a case law that addresses whether district courts should be made to make such findings, whether they shouldn't be made to make such findings, etc.? So, and correct me if I'm misunderstanding your question, but so I don't, what I think that the judge concluded in this case is that, well, not what I think, what she definitely concluded in this case is that the child felt free to choose for himself where he wanted to go. He did not believe that he was being pressured. What was her understanding of the level of pressure the child was subjected to? Because the thought would be this. If the district court erred on that. Then that might infect the ultimate judgment the district court made. I'm not saying that the district court did or didn't, but I'm just saying there would be a logic to saying, well, for me to evaluate the district court's assessment of how free the child was to handle the influence, I need to know how much influence the district court really thought was bearing on the child. Once I knew that I can look at the record and say, well, the district court just didn't see how much influence really was being exerted on the child or got it exactly right. That is the level of influence. So was there a finding by the district court on the level of influence the child was subjected to as opposed to how the child responded to whatever influence there was? So there was the judge does not make a clear finding that there was no undue influence at all. What the judge does do is lay out her factual findings, which support a version of this that, you know, that the parents are in conflict, that the child has, you know, felt torn between them in the past, but that he has, you know, in her factual findings, she says that he has, you know, she's struck by the positive things that she has to say about the mother, about his experience in Venezuela. He's incredibly measured. He feels like he can talk to his mother whenever he wants to. He has his own phone. And they and then at the end of the day, I think she says, you know, whether or not the parents, the father is so accommodating, the child feels as though, you know, he is absolutely free to choose whatever he wants to do. So I think her while she doesn't come out and make the clear statement that there's just no undue influence in this case, I think that her factual findings support a view of the record that undue influence isn't hasn't been clearly established here. What are we to make of the district court's reference here to the child's, as she puts it, realistic understanding of the situation in Venezuela knows there are shortages and hardships and is aware that people, including some of his friends are leaving the country. He told the court he would feel relieved if he were allowed to stay with his father in the United States and did not have to worry about being sent back. What is that? Where does that finding factor into the analysis? Well, so I think that that goes to the fact that a couple of ways, but I think mainly it goes to the fact that the child's objection is rational. Both the judge and Dr. Darcy sort of noted that his objections to return were measured, but they were rooted in his own experiences. He notes that he and his mother lived better than others, but he also notes that they had to boil hot water and that it's easier to find food here. And he is in communication with two of his best friends who have been forced to leave Venezuela. His father testified that he admits he sort of talks to him about the situation there, his own safety, but in a sort of in an appropriate way that you would talk to a child about his homeland. I think, you know, it but it goes to his level of maturity and his love and his objection to return that he can think about it thoughtfully in a measured way. And that it's it's it's rational that there are rational reasons for why he might be wanting to stay here. And it's not his only rational reason. The judge also notes that he talked about how he had moved four times in five years and he felt really ready to be settled. And he was very settled here. And, you know, other factors. So I think that that goes to she's not making the decision based on the country conditions, but I think it informs the child's level of maturity and his rational decision to want to stay. How do you respond to opposing counsel's argument? You heard it that. Totally disregarded was the mother's testimony. So. So it's not really pointed to anything that establishes that the district court failed to consider the mother's testimony. As the district court's decision and her questioning of the child, which I that I encourage the courts, if they haven't already to read it shows, is that she did carefully consider the petitioner's allegations, including the allegations of Hindu influence, and asked the child about those and, you know, consider thoughtfully consider those issues. She asked, you know, the child multiple times in a fashion. Do you feel pressured by either parent? Are you communicating with the parent? And the child says very clearly, you know, I used to feel like I was torn in a lot of directions. I think the record shows that this child has unfortunately been pulled into the parental into the court system and into the parental conflict already. And Venezuela is not a stranger to this system. But he said, but now I feel like I really am doing what I want. And the judge pressed and said, you know, well, you know, why? How do you get there? How do you figure that out? And he said, you know, I just really thought about it for a long time. And I realized I don't have to be on one of their teams. I can be on my own team. And, you know, repeatedly said that he felt warmly about both parents and he just wanted to stay here. I don't I just I mean, I am happy to kind of go through a lot of them in detail, but I don't see evidence that the judge disregarded the mother's testimony here. One thing I will say is to the extent that, you know, this is a narrow exception to the question before the judge is, is this child sufficiently mature that I should take his opinion into account? And two, is the objection to return sincere? And if that's the case, she can exercise her discretion to allow the child to remain while the custody case then gets determined in the Massachusetts courts. It's not the ultimate custody decision. So testimony of the moms, you know, that sort of ancillary to that, that goes to more of a sort of what's best for the child in the custody. What are the, you know, you know, more wholesome idea of sort of like, you know, what's in the child's best wishes? The judge actually, you know, to some extent isn't considering that in this context. This context is really narrow to the question of is the child mature and is this objection to return sincere? So the next step, as you say, would if and, you know, we have obviously it's still a question before us. If the request to return the child is denied, then the Massachusetts probate and family courts would address issues of parenting and custody as those issues are presented by the parents. That is correct. The only issue is whether the return will happen subject to the convention and which which jurisdictions court will handle the underlying custody issue. The underlying custody issue is not at play in this case. And it will go to the if it's, you know, under if we prevail, then it will go to the Massachusetts probate court. To what extent, as a matter of process, can can the can the child if, you know, if the determination is to that he, you know, remain in the United States? To what extent can he, you know, two years from now? Seek a reconsideration of some sort. Let's say he says, you know, I want to go back to Venezuela. I made a big mistake. I realize I made a big mistake. Well, so it wouldn't there's no wouldn't be a mechanism under this decision under the convention to reconsider the convention case that, as I said, so it would go to, you know, if it's denied, it will go to the Massachusetts probate and family court to handle the custody issues. And if the child, you know what the father has testified all along and what, you know, the child told the judge in this case is that the father, if the child wanted to go back, the father would send him back. And that's been the father's position on the record. You know, if that became a challenge, that would be something for the family courts to handle. If the child decided they wanted to return. Are you aware of any other courts that have, you know, address the objective criteria issue? Do you mean the third argument in this case? Yeah, right. Yes. Yeah. So I'm not aware that there has been a case that's done that. Most of the case law suggests the opposite, that these are sort of idiosyncratic, fact intensive cases that should be judged by the fact finder in a case by case basis. That is what the convention contemplates. And, you know, as they note in the commentary there, they tried really hard to find a minimum age at which the child wishes would not be considered. And they couldn't come up with one because they thought that it would be arbitrary. And they decided to leave these cases to the discretion of the fact finder. I think it would probably, as a practical matter, be very challenging given the disparate types of cases before the court and the different facts and just the different circumstances of the children in these cases to come up with one set of facts that always must be considered in each case. So I think that would be a practical challenge. But, you know, on the merits, most importantly here on the merits of his argument, I think, you know, even if the court were inclined to adopt petitioners own list of factors, I think we still prevail. I would argue that the judge considered and addressed each one of them and found them, you know, not persuasive. And I would say that her opinion on that is not clear. Thank you, Miss Beckley. Mr. Barak. Thank you, Your Honor. I, I would just start with it. This case required by the district court a clear finding that the child here was indeed free of the father's undue influence. And the case I would point you to is 499F3259, which holds that in making its determination, a court should also consider whether a child's desire to remain or return to a place is the product of undue influence, in which case the child's wishes should not be considered. Secondly, I would argue that the mother's viewpoint is not. Why did the district court not make that finding in your view? She didn't support it at all. There's just absolutely no support. She didn't credibly weigh any of the evidence regarding the father's undue influence upon him. You know, she didn't, she didn't examine, for example, the time, the age of the child when he was taken, the time, the lack in the mother's testimony, which I believe is not, not ancillary. I think it's very relevant and material, which wasn't addressed is the fact that the mother testified that the child had changed his mind. Originally, again, he wanted to return to Venezuela. It was only after contact was completely cut off that two months later, and over the time period where the father had the opportunity to exert the influence upon this poor kid, that he had a change of mind as to whether to be sent back or not. It was only at that point he was objecting. In fact, the mother testified when asked, it was her opinion, where he wanted to live had changed, obviously because of the, this is the mother, obviously because of the bad emotional communication in dealing with his father. Could I ask you, could I ask your, a version of what I asked the opposing counsel, and I'm just trying to understand your argument in this respect. Sure. One possibility is that what you're saying is the district court, notwithstanding accurately understanding the level of influence the child was subjected to clearly erred in concluding that he was free from it. Okay. That'd be one possibility of what you're saying. Another version of what you're saying is the district court in finding that the child was free from the undue influence clearly erred in describing the level of influence the child was subjected to. Those strike me as very different arguments. And I'm having trouble figuring out what you want us to conclude as between them, both, neither, one and not the other. Yes, I, I, my conclusion here is that the father unduly influenced this child, period, stop. That's what the evidence in this case shows. That's what the evidence of the mother showed. That's what the evidence of the neutral guardian item showed. I don't know. That's what even the father's only testimony. I don't know if I'm not putting my question well, but that answer doesn't, to me, answer my question. Okay. Okay. So the district court found aware of the undue influence issue that the child made a free decision. And I know you are saying the district court clearly erred in that respect. And I'm trying to figure out where you are locating the source of her error. Was it in her description or finding as to the level of influence the father exerted? Or is it as to her finding with respect to the child's capacity to act free from it, even if she accurately identified the level of influence the child, the father exerted? Both. I think she didn't provide and address the level of influence that this father had on the child. And therefore, she stopped there. So she couldn't get to the point of whether this child was improperly influenced or unduly influenced by the father in that regard. That's how I would address it. I think that there was not a clear finding here that this child was free of an undue influence. And I think she needed to analyze that first and foremost. And then I think to your point, then she needed to address, potentially, because it is such a narrow exception, but to potentially address the impact of that undue influence upon him. That's how I'd answer it. I do want to touch upon my remaining time. Yes, Judge. You are out of time, but take 30 seconds to wrap up if you have another point to make. I would just stand up, please, but I would say that our public policy argument, I think, is indicative of the failure here. That if there is an objective set of criteria, which can be taken into consideration on a case-by-case basis, it should look at the age of the child, the viewpoint of both parents, the passage of time of the taking, the quality of time with the former custodial parents during that period of time, independent neutral evidence, the custodial orders, and to your point, Judge, the influence, not necessarily the undue influence, but the influence by the abductor during that time and whether or not that was undue. And if there is a clear set of criteria, the kind of mistake that happened in this case wouldn't happen. And I would leave you with this. If this decision were to allow to stand, it would really result in a failure to comport with the express purpose of the Hague, which requires the narrow application, and it would reward the father ultimately for the wrongful conduct, which is prohibited by the tenets of the Hague Convention. Thank you to both counsel. We'll take the case under advisement and get to a decision as soon as we can. Thank you, Your Honor. That concludes argument in this case. Attorney Barak and Attorney Beckley, you should disconnect from the hearing at this time.